IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLENN GARRISON,<br><br>          Plaintiff,<br><br>     v.<br><br>TD AMERITRADE HOLDING CORPORATION, JOSEPH H. MOGLIA, STEVE BOYLE, LORENZO A. BETTINO, ANN HAILEY, BRIAN M. LEVITT, KAREN E. MAIDMENT, BHARAT B. MASRANI, IRENE R. MILLER, MARK L. MITCHELL, WILBUR J. PREZZANO, TODD M. RICKETTS, and ALLAN R. TESSLER,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Glenn Garrison ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by TD Ameritrade Holding Corporation ("TD Ameritrade" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning TD Ameritrade and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against TD Ameritrade and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to The Charles Schwab Corporation ("Charles Schwab") (the "Proposed Transaction").

2. On November 24, 2019, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Charles Schwab. Pursuant to the terms of the Merger Agreement, the Company's shareholders will receive 1.0837 shares of Charles Schwab common stock for each share of TD Ameritrade common stock owned (the "Merger Consideration").

3. On March 10, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against TD Ameritrade and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TD Ameritrade shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. In addition, the Company's stock trades on the NASDAQ Global Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of TD Ameritrade shares.

9. Defendant TD Ameritrade is incorporated under the laws of Delaware and has its principal executive offices located at 200 South, 108th Avenue, Omaha, Nebraska 68154. The Company's common stock trades on the NASDAQ under the symbol "AMTD."

10. Defendant Joseph H. Moglia ("Moglia") has been the Chairman of the Company's Board at all times during the relevant time period.

11. Defendant Steve Boyle ("Boyle") is and has been the Chief Executive Officer and a director of TD Ameritrade at all times during the relevant time period.

12. Defendant Larry Bettino ("Bettino") is and has been a director of TD Ameritrade at all times during the relevant time period.

13. Defendant Ann Hailey ("Hailey") is and has been a director of TD Ameritrade at all times during the relevant time period.

14. Defendant Brian Levitt ("Levitt") is and has been a director of TD Ameritrade at all times during the relevant time period.

15. Defendant Karen E. Maidment ("Maidment") is and has been a director of TD Ameritrade at all times during the relevant time period.

16. Defendant Bharat Masrani ("Masrani") is and has been a director of TD Ameritrade at all times during the relevant time period.

17. Defendant Irene Miller ("Miller") is and has been a director of TD Ameritrade at all times during the relevant time period.

18. Defendant Mark L. Mitchell ("Mitchell") is and has been a director of TD Ameritrade at all times during the relevant time period.

19. Defendant Wilbur J. Prezzano ("Prezzano") is and has been a director of TD Ameritrade at all times during the relevant time period.

20. Defendant Todd M. Ricketts ("Ricketts") is and has been a director of TD Ameritrade at all times during the relevant time period.

21. Defendant Allan R. Tessler ("Tessler") is and has been a director of TD Ameritrade at all times during the relevant time period.

22.     Defendants Moglia, Boyle, Bettino, Hailey, Levitt, Maidment, Masrani, Miller, Mitchell, Prezzano, Ricketts, and Tessler are collectively referred to herein as the "Individual Defendants."

23.     The Individual Defendants, along with Defendant TD Ameritrade, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

24.     TD Ameritrade is a provider of securities brokerage services and related technology-based financial services to retail clients and independent RIAs. TD Ameritrade provides services to individual retail investors and traders and to RIAs predominantly through the Internet, a national branch network and relationships with RIAs. TD Ameritrade uses its platform to offer brokerage services to retail investors and traders under a simple, low cost structure and brokerage custodial services to RIAs.

### The Company Announces the Proposed Transaction

25.     On November 25, 2019, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> SAN FRANCISCO & OMAHA, Neb.--(BUSINESS WIRE)--The Charles Schwab Corporation ("Schwab") and TD Ameritrade Holding Corporation ("TD Ameritrade") today announced that they have entered into a definitive agreement for Schwab to acquire TD Ameritrade in an all-stock transaction valued at approximately $26 billion. Under the agreement, TD Ameritrade stockholders will receive 1.0837 Schwab shares for each TD Ameritrade share, which represents a 17% premium over the 30-day volume weighted average price exchange ratio as of November 20, 2019.
>
> Schwab President and CEO Walt Bettinger said, "We have long respected TD Ameritrade since our early days pioneering the discount brokerage industry, and as a fellow advocate for investors and independent investment advisors. Together, we share a passion for breaking down barriers for investors and advisors through

a combination of low cost, great service and technology. With this transaction, we will capitalize on the unique opportunity to build a firm with the soul of a challenger and the resources of a large financial services institution that will be uniquely positioned to serve the investment, trading and wealth management needs of investors across every phase of their financial journeys."

The combination brings together two leading firms with proud and similar histories of making investing more accessible to all. More than 40 years ago, Schwab and TD Ameritrade started out as alternatives to traditional Wall Street brokerages. They helped lead a revolution to become the preferred model for full-service investing among tens of millions of direct investors and the go-to providers of custodial and consulting services for thousands of independent investment advisors. The firms' mutual respect and complementary cultures will help Schwab successfully integrate TD Ameritrade into its future operations.

With today's announcement, the TD Ameritrade Board of Directors has suspended its previously disclosed CEO search, naming Stephen Boyle, TD Ameritrade EVP and CFO, as the company's interim President and CEO. Mr. Boyle will assume leadership of the company effective immediately, guiding its management team through its fiscal 2020 plan and the proposed integration with Schwab.

"Partnering with Schwab on this transformative opportunity makes the right strategic and financial sense for TD Ameritrade," Mr. Boyle said. "We share a common history—a journey since 1975 that has made Wall Street more accessible and financial dreams more attainable for millions of Americans. Our associates are fiercely proud of that legacy and all that we have accomplished to make TD Ameritrade one of the premier firms in financial services. Now we look to join forces with a respected firm like Schwab that shares our relentless focus, and to do more than we could do apart. Together, we can deliver the ultimate client experience for retail investors and independent registered investment advisors. We can continue to challenge the status quo, pooling our resources and expertise to transform lives—and investing—and deliver sustainable, long-term value to our many stakeholders."

Mr. Bettinger added, "One of Chuck Schwab's ambitions has always been to build a strong and independent Schwab that would be around to serve clients for many years in the future. We believe the combination of our two great companies positions us to be competing and winning in the investment services business for the long run—the very long run."

**Transaction Details**

This transaction creates significant strategic benefits for the combined organization and is expected to deliver attractive returns for the owners of both companies, while further improving the investing and trading experience of both

Schwab and TD Ameritrade clients. It allows Schwab to continue to add further scale on top of its organic growth, helping to drive sustainable, profitable growth and long-term value creation. More specifically, the acquisition will add to Schwab approximately

12 million client accounts, $1.3 trillion in client assets, and approximately $5 billion in annual revenue. This added scale is expected to result in lower operating expenses as a percentage of client assets ("EOCA"), help fund enhanced client experience capabilities, improve the company's competitive position and further its financial success and diversification of revenue. The resulting combined firm is expected to serve 24 million client accounts with more than $5 trillion in client assets; taken together, the two firms recently generated total annualized revenue and pre-tax profits of approximately $17 billion and $8 billion, respectively.

The transaction has been unanimously approved by the Boards of Directors of Schwab and TD Ameritrade, as well as the Strategic Development Committee of TD Ameritrade's Board—a committee comprised solely of outside, independent directors that was established by the Board of Directors of TD Ameritrade to oversee and conduct the process and all negotiations concerning the transaction on behalf of the Board. Post-closing, The Toronto-Dominion Bank ("TD Bank"), which currently holds approximately 43% of TD Ameritrade's common stock, will have an estimated aggregate ownership position of approximately 13% in the combined company, with other TD Ameritrade stockholders and existing Schwab stockholders holding approximately 18% and 69%, respectively. TD Bank's voting stake will be capped at 9.9%, with the balance of its position held in a new, non-voting class of Schwab common stock. Additional details regarding stockholder matters, including upcoming votes, will be provided in the subsequent merger proxy materials.

In addition, this transaction included a renegotiation of the Insured Deposit Account (IDA) agreement by Schwab and TD Bank, to be effective at closing. The agreement was extended for a 10-year term beginning in 2021, and the servicing fee paid by Schwab on balances within the IDA was reduced by 10 basis points. Over time, Schwab will have the option to reduce balances routed to the IDA sweep program, subject to certain restrictions. This arrangement provides flexibility to optimize related revenue as those balances are shifted to Schwab.

With anticipated synergies, the deal is expected to be 10-15% accretive to GAAP EPS and 15-20% accretive to Operating Cash EPS in year three, post-close. Focusing on expenses, current estimates are for approximately $1.8 to $2 billion run-rate expense synergies, which represents approximately 18-20% of the combined cost base. Some of the expense synergies the combined firm expects to realize will come from elimination of overlapping and duplicative roles. Additional synergies are expected to be achieved through real estate, administrative and other savings. Details on these synergies will be shared at a later date, once the integration process is underway.

The transaction is subject to customary closing conditions, including receipt of applicable regulatory approvals and approval by the stockholders of both companies. Closing is also subject to a "majority of the minority" TD Ameritrade stockholder approval condition, which means that the transaction must be approved by holders of a majority of the outstanding TD Ameritrade shares, other than TD Bank and certain other shareholders of TD Ameritrade that have entered into voting agreements. TD Bank and certain stockholders of TD Ameritrade (who collectively own approximately 52% of the TD Ameritrade shares), and certain stockholders associated with Charles R. Schwab (who own approximately 10% of the Schwab shares), have agreed to vote their shares in favor of the transaction. The parties expect the transaction to close in the second half of 2020, and integration efforts to begin immediately thereafter.

Following the close of the transaction, TD Bank will have the right to name two new seats on the Schwab Board of Directors and TD Ameritrade will name a single director.

Credit Suisse Securities (USA) LLC served as financial advisor and Davis Polk & Wardwell LLP acted as legal advisor to The Charles Schwab Corporation. PJT Partners LP and Sandler O'Neill + Partners LP served as financial advisors and Wachtell, Lipton, Rosen & Katz acted as legal advisor to the Strategic Development Committee of the Board of Directors of TD Ameritrade.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

26. On March 10, 2020, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

27. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding the Company's Financial Projections</u>**

28. The Registration Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

29. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

30. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

31. Specifically, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA;

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

(ii) Adjusted Net Income; (iii) Adjusted Earnings Per Share; (iv) Levered Free Cash Flows; and (v) Unlevered Free Cash Flows.

32. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Advisors' Financial Opinion**

33. The Registration Statement contains the financial analyses and opinion of PJT Partners LP and Sandler O'Neill & Partners LP (the "Financial Advisors") concerning the Proposed Transaction, but fails to provide material information concerning such.

34. With respect to the Financial Advisors' *Discounted Equity Cash Flow Analysis—TD Ameritrade*, the Registration Statement fails to disclose: (i) the Company's terminal values; (ii) the basis for the application of an exit multiple range of 12.0x to 14.0x; (iii) the basis for the application of an implied perpetuity growth rate of 1.5%; (iv) the inputs and assumptions underlying the Financial Advisors' selection of discount rates ranging from 8.5% to 10.5%; and (iv) the fully diluted number of shares of the Company's common stock.

35. With respect to the Financial Advisors' *Discounted Equity Cash Flow Analysis/Net Present Value Analysis—Schwab*, the Registration Statement fails to disclose: (i) the terminal values of Charles Schwab; (ii) the basis for the application of an exit multiple range of 15.5x to 17.5x; (iii) the basis for the application off an implied perpetuity growth rate of 3.2%; (iv) the application of and price to 2023E earnings per share multiples ranging from 15.0x to 19.0x; (v) the inputs and assumptions underlying selection of the discount rates ranging from

8.5% to 10.5% and 7.92% to 11.92%; and (vi) the fully diluted number of shares of Charles Schwab's common stock.

36. With respect to the Financial Advisors' *Illustrative Pro Forma Value Creation Analysis*, the Registration Statement fails to disclose the number of fully diluted shares of Charles Schwab common stock outstanding after the Proposed Transaction.

37. With respect to the Financial Advisors' price targets analyses, the Registration Statement fails to disclose the specific price targets observed as well as the sources of such targets.

38. With respect to the Financial Advisors' analysis of premiums paid, the Registration Statement fails to disclose the specific transactions observed as well as the premiums paid in the transactions.

39. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

40. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

41.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44.    Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

45.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

47. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger

Agreement and the preparation of the Company's financial projections.

49. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of TD Ameritrade within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of TD Ameritrade, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 6, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*